We'll start today with the case of United States v. Schmitz and we'll hear first from Mr. Adler. May it please the Court, Andy Adler from the Federal Defender's Office on behalf of Steven Schmitz. The Magistrate Judge's report and recommendation in this case is not good enough for government work. Our request here is quite modest. We think this case should be sent back for a proper analysis. The report we have in front of us is deficient both legally and factually. Legally, the report relies exclusively on the Leon Goodfaith exception and the key paragraph is on page 6 of the report. That's the one we're challenging on appeal and that's the one he addresses whether the State Magistrate Judge was misled. And the key sentence there that we are challenging here, one of them, is that Mr. Schmitz did not meet his burden to show that Agent Valencia knowingly or recklessly omitted any mention of the apartments in the warrant application. The problem, of course, is that it is the government's burden, not the defendant's burden under the Goodfaith exception. So that is a legal error right there off the bat. Here's the question. We have certain factual findings that we need to contend with and as you know, the standard of review on those is clearly erroneous. And the Magistrate Judge found that the agent, when he testified, was truthful and credible. And the agent testified that he didn't know and he had no way of knowing at the time that he sought the application, sought the warrant, that there was more than one residence at this single location. So I'd like to ask you to address that if you would. Of course. So that goes to the factual deficiency part of the report here. So if we've got the legal error, then the question is, well, what do we do with that? Is that irrelevant? Shifting the burden onto the defendant, that's a big problem, but it's particularly problematic. It is a problem, but as you know, we can affirm for any reason in the record. And if we are bound by that factual finding, unless that factual finding is clearly erroneous, I need for you to explain either that it's clearly erroneous or that if it's not clearly erroneous, that it bears materially on the outcome here. Sure. So a couple of points about that. The key factual finding is that he didn't actually know, right? He credibly testified that he didn't know about the apartments. I don't know how this court can meaningfully review that purported credibility determinations because I don't know what it is based on. And the critical problem is that he does not, the report does not at any time address any of our evidence. He doesn't say a word about Rosanna's testimony, the landlord, and we have compelling evidence in this case that could very well make a difference if the burden was on the government that the agent here actually knew, actually knew that there was apartments here. For example- Let me stop you for a second. Sure. It seems like you're arguing in your brief that really it rises or falls on the obtaining of the first search warrant. Yes. Isn't that right? Okay. That being the case, we are looking at the time that he swore out the application. When he swore out the application, had he spoken yet with Rosanna? I'm sorry. Yes. Her last name is escaping me. That is her last name actually. Valencia himself had not, but I would be remiss if I did not, this is my favorite part of the case, talk about the mystery man from the city. I understand that. Yes. But there's no factual findings regarding that man. That's exactly my point, is that we don't know what the magistrate judge thought about that. He said nothing. But it would have to be the world's biggest coincidence if a man from the city comes that morning. She has no pending matters with the city. He asks to see the home that she just- I agree. It's suspicious. But at the same time, we have the magistrate judge's factual finding with respect to the agent's testimony that he didn't know, he didn't have any reason to know, he hadn't talked to, or whatever, the owners beforehand. And there's a lot of other evidence, such as there's one garbage can, the one garbage can has baggies and marijuana residue in it, which seems pretty similar to what was found in Mr. Schmitz's car in the traffic stop a couple days earlier. And there's like some other things of that nature. There's only- the only way to get into the efficiencies is through the back. They can't see the back from the street, et cetera. I hear all of that, but there's a lot the other way that the report does not mention. There's an extensive surveillance operation here. There are eight police officers over there for months surveilling this property, at least once a week, day and night. They are doing trash pulls, they are looking at property records, they are running the tags of the cars in front of the house. And you're telling me they can't tell that there are four different families living in this residence? I'm not telling you anything. Well, I'm rhetorically asking. Except that we do have these factual findings and the district court is in the position to make factual findings. We are not. I understand that, Your Honor. We appreciate that. I think we have to look at this, number one, through the lens of our erroneous shifting of the burden of proof. So we don't know what the judge would have found if he placed the burden of proof on the government. We have these conclusory credibility findings. You can't just use the word credible and expect an appellate court to rubber stamp that. That doesn't insulate appellate review here. Why is he credible? Why did he testify truthfully? Was it his demeanor? Did he think Rosanna was lying? Did he just not consider her testimony? We have no way of knowing that. There are three conclusory sentences in this paragraph. I don't know what they're based on. I'm not sure how this court can review it. But most importantly, what does he think about the mystery man from the city? Was it a coincidence? Was it not? What does he think about the officers coming into the residence and saying, oh, show me the entrance to your back room? Well, I mean, the government says that's a bedroom in the house. I don't know. It sounds like an entrance suggests that he knew there was a separate dwelling unit there. Then we have the agents going from home to home searching two innocent families here before they get to Schmitz. This is exactly why we have the particularity requirement. Right, right. And that, and you're absolutely right. Maybe those families have 1983 actions. But the question here isn't what their rights are. The question is whether Mr. Schmitz's rights were violated. And in this case, the warrant application seems to be particular. The only problem is with respect to what the agent knew. The only question here is whether the agent knew or didn't know. I mean, that's the $100 million question. You would agree with me, I think, that if the agent didn't know, didn't have reason to know, that there's no problem here. Maybe you wouldn't agree with me, and you can tell me that. But if the agent did know, then there's a problem.  I do agree with you, but that's why I'm trying to emphasize a lot of the compelling evidence in our favor that goes unmentioned. And that's particularly why— But again, I'm sorry to interrupt. Again, we're talking about at the time that the search warrant is sought. Yes, agreed. The point is, the burden-shifting problem here, that error becomes particularly important when we know that this is a close case, that we have compelling evidence that is not being considered by the magistrate judge. And so I don't know how this court can review that and say, it's not clearly erroneous because his demeanor, because Rosanna was lying, because the facts are actually consistent. This is just one giant coincidence that the man from this— Like, how do we determine that? So I think that's why I'm saying this report is just not good enough, because it's also a very rushed job here. The hearing is on a Friday. This report comes out on a Monday. I'm never going to fault a colleague of mine for trying to do something efficiently, as long as it's not— Well, that's my problem, is that it's not adequate here. This is a serious case. It's a compelling argument that we have, a compelling motion, and we have a report that has a legal error. It doesn't even mention anything about the particularity requirement. If you look at the legal principles section, nothing. You're talking about this legal error. And because our review is de novo, and so we can say, OK, we hear you, but we're on de novo review. We agree the burdens with the government, and then we can evaluate the case. We don't have to reverse on the basis of that one sentence, because we can apply the burden correctly, right? I don't agree with that, Your Honor, because I think when typically we have a legal error like this, we would ask, is this harmless, right? That's what we would typically do. The government has made no effort to show that it is harmless. But so in our Morales case, we say Morales correctly complains that the magistrate judge improperly assigned the burden on this issue to the defense. In any event, our own review is de novo, and we affirm the burden lies with the government. So under de novo review, we can say, this is where the burden properly lies, and we can evaluate the case. I don't agree with that, Your Honor. I think we have to ask if there's a—my understanding, I think you're looking at footnote two of that decision. Correct. Yeah. I'm not sure what to make of that, but I don't think they're saying, oh, we can just make our own factual findings here because—on the correct burden of proof. I think that's a job for the district court in the first instance. If the burden is on the government to prove good faith, which we all agree that it is, then I think the district court has to do that in the first instance, or at the very least, the government has to come in here and say, well, this error, reassigning the burden of proof, which is a big deal, is actually harmless. And I don't see how we can do that when all we have are these bare, conclusory, credibility findings that I'm not even sure how this court can meaningfully review, especially when we have all this compelling evidence that this officer did, in fact, know. And by the way, you know, we have this planning and zoning website that I found. I'm not a real estate expert. I typed in the owner's name and guest house at the property. There's a permit for it. I mean, this is very easy to figure out. So I think the government's got to show that this erroneous misassignment of the burden of proof is harmless, and they haven't even tried to do that in their brief. All right. Thank you. Thank you, Mr. Adler. And is it Ms. Sadler? Very poetic today. Let me just start by asking you, because your friend on the other side of the aisle there makes some good points. And he says, look, there's no way that we can know whether the credibility determination, what the credibility determination that the magistrate judge made, is based on. So how can we evaluate that on review? What is your response to that? Well, first, I'll highlight on page four of the report and recommendation, the magistrate judge correctly identified the burden. Secondly, on page six, in reference to the burden being placed on the defendant for the friendship.  And I appreciate that. And you should certainly get to that. But can you answer my question first? Which is the fact that the magistrate judge simply says, I find the agent credible without explaining why. How can we rely on that? Or how can we even review it? Because we don't know what he's basing it on. This court said in Walker that implicit and explicit credibility determinations will still be given substantial deference. So beyond the explicit mention of credible, you have the facts here from the affidavit that he lists, noting the months of surveillance that officers conducted, the detailed trash pulls following the confidential buys, the pulling of the property appraisal record listing the single family house, as well as the single unit dwelling. All of these are undergirding that credibility determination. Additionally, there is really no conflicting testimony that the magistrate judge had to reconcile here between Ms. Rosanna and Agent Valencia that mattered for that determination of whether or not the house appeared to be a single unit to officers from the front. Ms. Rosanna, for one thing, mentions that the house is a single family. It has one mailbox out front. If you're standing in the very front of the house, she testified that you wouldn't know that there were efficiencies in the back. Officers saw the same thing during their surveillance. So that's all true, but we also have this mysterious man who shows up and says he's there with the city and he wants to know about, you know, whether there's, who lives there or whatever the case may be. And there's, you know, no explanation of that in the magistrate judge report. No one asked Agent Valencia about this directly in the testimony, but he made the point that he had first made contact with the individuals in the home upon executing the warrant and no one from the team had made contact prior to the execution of the warrant, suggesting that the defense team or the investigative team had no contact with anyone. There's nothing in the record that says the identity about the mysterious man, but in any case, it's a red herring. It doesn't have anything to do with whether or not the officers knew the floor plan of the house. All right. Thank you. And I think you wanted to address the fact that Mr. Adler has talked about the legal error in the magistrate judge's report about putting the burden on Mr. Schmitz. Yes. So the magistrate judge on page four referenced Robinson and placing the burden on the government to show good faith here, including with reference to facts in the affidavit. He then walks through those facts in the affidavit. Separately on page six, he analyzes and addresses an argument that Mr. Schmitz raised below and doesn't raise on appeal the Frank's claim. The fact that he addressed that, which bears its own burden separate from the good faith analysis, doesn't detract at all from the fact that the magistrate judge correctly identified on that separate issue, the correct legal analysis to be performed there. And to the extent that there's any confusion because, you know, the magistrate judge had to address both of those burdens and legal analyses that should be resolved in favor of the magistrate judge, knowing what he's doing by referencing both. But let's say just for purposes of a hypothetical question, let's say we decide that we're not going to resolve it in favor of the magistrate judge and that the magistrate judge was, we find, this is hypothetical, the magistrate judge was confused. What's your best argument for why we should uphold this anyway? You can affirm on any basis in the record. Here you have a pretty discreet universe of facts. That limited universe of facts bears directly on both the particularity and the good faith analysis here. You have the property appraisal record that shows it was a single family home listed as one unit as of the property appraisal on January 1st of that year. This warrant was sought on January 25th, 2023. You also have the months of surveillance that the officer conducted that showed that Mr. Schmitz lived at that residence. And you also have the testimony from both him and Mrs. Rosanna that it was impossible to see the efficiencies in the rear of the residence due to the brush, the wooden fence around and from the available surveillance locations that officers had at their disposal. What about Mr. Adler's argument that because the magistrate judge was confused by the burden of proof, he was looking at the evidence and listening to the testimony with the wrong idea about who had to prove what. And so we can't really trust any of his findings because he had in mind the wrong burden to begin with. I think that you can look at the testimony and see for yourself that there's nothing in the testimony so contrary to the laws of nature or contradictory that it would, you know, contradict the magistrate's credibility findings. And even if he did, Mr. Schmitz can't point to anything specifically that shows that any of those findings were clearly erroneous about the outward appearance of the house, the property record, etc. What would be your response to the argument that, okay, take the agent's testimony as credible at the time that he applied for the search warrant. They believe that this was really just one residence. At the time the search warrant was executed, they were almost immediately told that they were not searching in the right place and that it was in, I think, the north part of the property. And then they went to another residence, another unit, and then that was the wrong place. And then they finally do end up at the right place. At what point should we consider whether the agents should have gone back for a second warrant, a more particularized warrant, once they learned that this warrant was not as particularized as they thought it might be? And I'm thinking particularly about the Ellis case and how you might distinguish that. Yes. So this case is different from Ellis in several notable factors. First of all, in Ellis, there was no target of the search named. Here officers knew and were familiar with Mr. Schmitz. They knew that they were looking for Mr. Schmitz. Secondly, Ellis concerned mobile homes and said, go look for the third mobile home on the street. That would be akin to here saying, go look for the sixth house on Violet Circle Drive. They did say, go look at a different unit, right? And they did go to another unit, and that one was also wrong, and then they had to go to another unit. So, you know, I do think there's some similarity there. Here you have, instead of separate residences as the mobile homes were separate units, you have a singular connected house, which both Mr. Rosana and Agent Valencia testified the house appeared connected on the front and back. When they had the warrant, it was detailed. It had descriptions of the outside of the house. In Ellis, there was only a description of a third mobile home. Here, officers knew that they were going up the pink driveway to a red door of a house with a single mailbox, 4279. And upon arriving there while executing the warrant, they asked for the back room. Mrs. Rosana points them around to the back of the house. They go look there. They don't see any individual markings noting that it's a different specific unit. The house looks connected, and there's even a door on the inside of Mr. Schmitz's efficient see where they found all the contraband that the warrant was set out to look for, and they didn't rediscover that. So under your theory, this was just one big connected house? This appeared to officers to be one connected house while they were conducting the search. They could have searched any part of that house? They had reason to think that he had access to the house at the time because there was a door that they saw, but they still limited their search to specifically his efficiency, and that's where they found the five firearms, the stash of cash. They had their search in the other efficiency, right? Didn't they also search part of that before they realized they were in the wrong one? They went in and they asked the family, and the family in there then pointed them into the direction of Mr. Schmitz, but they didn't search any other part of the home after that. So at the point at which they're doing all of this, and they do go back for a second warrant at some point, right? Yes. About an hour and a half after receiving the first warrant, they request a second warrant. So at some point, it apparently occurred to them that they might need a second warrant to get additional items, although it appears that they didn't note the efficiencies in that one either, correct? No, they copied and pasted the same description of the house, and in his testimony, Agent Valencia said that he did so because he still reasonably believed that the house was connected given the door inside and that Mr. Schmitz might have access to the main house. They didn't even need the second warrant. He sought it out of an abundance of caution. The first warrant didn't mention firearms. They knew that Mr. Schmitz was a convicted felon and wanted to seek additional firearms after finding them in plain view in the first search. So the, you know, even taking the first warrant at face value, that that was a valid warrant, that they got that one in good faith, it's your position that at no point between the, when they were executing the warrant in the main residence and learning that he was not in that, he didn't reside in that main part of the residence or in the first unit, in the second unit. It's your position that at no point they should have sought a more particularized warrant and that we should still apply the good faith exception to the extent that, to the extent that the first warrant was deficient. Yes, so like Garrison, officers here, once they realized that the area of the house that they were looking for, Mr. Schmitz residence, the target of the search was that efficiency. They limited their search to that efficiency, but there were no distinguishing markers on the efficiency. They might've said, you know, been more particular in the second warrant and said something like you might walk up the driveway and go through the gate to the second door on the left to that efficiency. But again, as noted earlier, this case sort of rises and falls on the, on the first warrant. And that warrant officers had no way of knowing that there was an efficiency in the back of the house. And even upon executing it, still Agent Valencia thought it was a room being rented. And upon entering, didn't see any markings that would suggest it was its own separate apartment. It was still connected and attached to the house and that attachment and the property record listing it as a single family home were in the back of his mind. Um, and those facts are also stipulated, um, in Mr. Schmitz trial stipulations as well that it was an attached and single family home. If there are no further questions, we would ask that you affirm. Thank you, Ms. Sadler. And now back to Mr. Adler. Thank you, Your Honor. Judge Kidd, I think you're exactly right to ask these questions because I didn't hear the government to say that they would have to, uh, get a new warrant. I mean, by the time they go get the second warrant, which maybe they didn't need, fine. But by the time they get it, they know it's sealed off. There's no access. Rosanna testifies explicitly. He sees that I've sealed off the door. She says, I need to get a key to let you in there. I have to call my husband to get the key. So they know it's a separate unit and they don't change the description on the warrant. What does that tell us? Let's say, just for the sake of argument, that we uphold the first warrant, but not the second one on that basis. What, how does that change? Nothing. We would lose, Your Honor. We don't, that's not our point. Our point is that this illustrates the cavalier attitude that this officer had to the, towards the particularity requirement. And the Ellis case, I don't understand the government's distinction because the exact, something worse happened here. In that case, they got lucky. The guy at the third mobile home, the wrong home, stopped them and said, this is the wrong one. Go to the fifth mobile home down the street. Here, they actually go in not one, but two innocent family homes. And at that point, this is the key point from Ellis, they are not relying on the warrant at all. They are relying on the word of the people on site. So how can we say good faith applies at that situation? Same thing as Ellis. And this is why, by the way, they try to use the ruse with the mystery man from the city because they didn't, they knew he was living in a separate unit, but they didn't know which one. Again, but this is a different argument, right? I mean, the argument that we were talking about earlier is you were challenging it at the time, at the time the warrant was sworn, right? Not at the time that they're executing it. Because we talked about how, at that point, it becomes the rights of the people whose place is he. Correct. Your Honor, we're not seeking to vindicate the rights of the third parties. We don't have standing for that. Our point is simply that it illustrates that this is exactly the situation that the particularity requirement was designed to address. Prevent officers from going from home to home until they get the right one. And I submit, this is why they tried to use the ruse to get into the home, to see which unit he was in. And when Rosanna had the presence of mind to deny consent, it didn't work. So what they did was, I would say, okay, we're just going to put the general address on the  We'll go on site. We'll figure it out from there. And then we see what happens with the searches of the innocent families. And this is exactly what Ellis was talking about. The government's brief, by the way, doesn't even cite that case. We relied on it pretty heavily, doesn't cite it. The government also refers to the fact on page four of the report, the magistrate judge himself recognized that the government bears the burden here, citing the Robinson case. I think that only underscores our point, that this work is, this report is inadequate. It is internally inconsistent. It is not carefully thought out. It is not an adequate report here. In addition, I mentioned this briefly. I wanted to return to it. In the legal principles section of the report, a little bit about probable cause, a little bit about good faith, nothing about particularity. That was the thrust of our argument here. It doesn't cite a single case, including Maryland v. Garrison, which is the seminal Supreme Court precedent on this. And footnote 13 of that case is particularly important, because that is our situation. And the court says, this case would be very different if they knew that there were two units, but they didn't know which one was the one that was dealing the drugs. That would be a totally different case. And that's really our case. Now, I understand you don't get there if you don't get past the credibility findings, and you think that the legal error is somehow immaterial. I understand that. But our point on that remains, I don't know how the court can review that. We also identified many discrepancies with Valencia's own testimony in this case that go unmentioned by the report, such as, you know, he testifies, well, first I walked up to the fence line from the park, then I'm back in my – actually, no, I didn't do that. I was in my car. But I couldn't see anything anyway, because there was a big bush in between. Yet, I surveilled the property there for multiple times, a handful of times. I don't – I mean, the report doesn't say anything about that. He's asked, if he remembers, if there are awnings over the individual apartments. I don't recall. He's asked if there are – what the names were of the people whose cars, whose taxis ran. If they were different last names. I don't recall. These are very dubious aspects of his testimony that maybe the magistrate just said, you know what, they're immaterial distinctions or discrepancies, fine, but we don't know that. This court doesn't know that. And so we have a compelling motion. We have compelling evidence. We have an obvious legal error on the face of this report. We have no discussion of the legal principles about particularity, and we have conclusory credibility findings that are impossible for this court to meaningfully review. So for those reasons, I just think that this case needs to be sent back for a proper legal analysis. That's all we're asking. We're not asking for the court to order him to grant the motion or anything like that. Just a sort of careful legal analysis that Mr. Schmitz was due. Thank you so much. Thank you, counsel.